# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| LOUIS HADDAD, | : |  |
|  | : |  |
| Plaintiff, | : | Civ. No. 07-5617 (GEB) |
| v. | : |  |
|  | : | **MEMORANDUM OPINION** |
| TERENCE P. FLYNN, J.S.C., JAMES M. | : |  |
| NEWMAN, BONNIE KLEIN, ELIZABETH A. | : |  |
| BALFOUR, MONMOUTH PROBATION | : |  |
| DIVISION, MONMOUTH COUNTY | : |  |
| SHERIFFS DEPARTMENT, MONMOUTH | : |  |
| COUNTY DEPARTMENT OF | : |  |
| CORRECTIONS, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

_____

**BROWN, Chief District Judge**

This memorandum opinion addresses the following five motions **(1-5**, below**)** filed by the Defendants:

 **(1)** motion to dismiss with prejudice Plaintiff Louis Haddad's ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the following Defendants: (1) the Superior Court of New Jersey, Monmouth Vicinage, Probation Division; (2) the Honorable Terence P. Flynn, J.S.C.; (3) probation officer Bonnie Klein ("P.O. Klein") (collectively the "State Judicial Defendants") [Docket # 79];

**(2)** motion to dismiss with prejudice Plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(6) filed by the following Defendants: (1) the Monmouth County Sheriff's Office; (2) the Monmouth County Department of Corrections (collectively the "Monmouth County

1

Defendants") [Docket # 82];

(3) motion for summary judgment on all counts of Plaintiff's complaint pursuant to FED.

R. CIV. P. 56 filed by James Newman ("Defendant Newman") [Docket # 81];

(4) motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), and motion for judgment on the pleadings on all counts of Plaintiff's

complaint pursuant to FED. R. CIV. P. 56 filed by Elizabeth Balfour ("Defendant Balfour")

[Docket # 83];

(5) motion for sanctions against Plaintiff pursuant to FED. R. CIV. P. 11 filed by

Defendant Balfour [Docket # 108].

The Defendants' motions stem from a single complaint filed by Mr. Haddad [Docket #1],

and as such, the Court has decided the motions in a comprehensive order.  The Court has

reviewed the parties' submissions and decided the motions without oral argument pursuant to

FED. R. CIV. P. 78.  For the reasons set forth below, the Court will grant all of the Defendants'

motions.

I.      BACKGROUND

A.  General Facts And The State Court Actions

This matter stems from divorce proceedings initiated against Plaintiff by his now ex-wife,

Defendant Elizabeth Balfour (f/k/a Elizabeth Haddad).  (Compl. at ¶ 11.)  The divorce proceedings

commenced on or about June 9, 2003, in the Superior Court of New Jersey, Monmouth County

Vicinage.  (*Id.*)  The Honorable Terence P. Flynn, J.S.C., a defendant in this case, presided in

Superior Court.  Prior to the divorce trial, the Superior Court ordered Plaintiff to cease filing motions

until the commencement of trial, as it was clear to the court that Plaintiff "was attempting to harass

both the plaintiff and the Court by filing so many motions." (St. Jud. Def's Mot. to Dismiss Ex. A (Flynn Opinion 12/20/06) at p. 12.) Following trial, Judge Flynn granted Defendant Balfour a divorce, and ordered that Plaintiff pay Ms. Balfour various monies for alimony, child support, and equitable distribution of their former estate. (St. Jud. Def's Mot. to Dismiss Ex. A (Flynn Order 12/20/06).)

Accompanying the judgement of divorce was a detailed 110-page opinion by Judge Flynn. (St. Jud. Def's Mot. to Dismiss Ex. A (Flynn Opinion 12/20/06).) That opinion detailed Plaintiff's long history of failure to pay bills, including his children's medical bills, school expenses, and car payments. (*Id.* at 13-16.) Plaintiff has been incarcerated twice because he failed to pay the court-ordered child support. (*Id.* at 16.) Each time, Plaintiff was released from custody after he promptly tendered the arrearage without apparent difficulty. (*Id.*) Judge Flynn's opinion explains Plaintiff had a thriving law practice, yet he went to great lengths "to make himself asset poor." (*Id.* at 40.) The court explained in detail how Plaintiff "with his extensive experience as a collections attorney, ha[d] done whatever he could to manipulate, conceal and deplete marital assets." (*Id.* at 48-67.) The prime example of this behavior was Plaintiff's manipulation of his client trust account. At trial, Plaintiff contended that he had not reconciled his client trust account in fifteen years. (*Id.* at 49.) Judge Flynn expressly rejected that argument and cited convincing evidence which demonstrated that Plaintiff had regularly monitored his firm's banking records. (*Id.*) In fact, Judge Flynn found that Plaintiff had been extensively "using his client trust account as his own checking account to pay for his personal expenses." (*Id.* at 52.) As the trial court correctly noted, "this [practice] was in violation of all [legal] ethical restrictions." (*Id.*)

Furthermore, the evidence adduced at trial revealed that Plaintiff "had been invading . . .

3

various retirement accounts and placing the money in his trust account to cover his expenses." The court explained that Plaintiff's apparent strategy was to "forestall an examination of the trust account . . . to hide what he was doing." (*Id.*) Finally, the court noted that while Plaintiff failed to pay some bills, he consistently paid others. Plaintiff paid bills from liquor stores[1], grocery stores, and restaurants, all from the client-trust account. (*Id.* at 53.) The Court explained that Plaintiff was "essentially funneling the money off to the side while claiming poverty." (*Id.*)

The trial court concluded that Plaintiff acted in bad faith throughout the divorce proceeding, and explained:

> [Plaintiff Haddad] has consistently acted in bad faith. He has sought to block legitimate discovery requests, such as those seeking his medical and banking records, knowing that the information contained in these records was damaging to the false positions he was holding before the Court. He provided false or incomplete information in court submissions. He has filed numerous motions repeating the same arguments in an obvious attempt to have [his ex-wife] expend time and money to respond. He has attempted to conceal and dissipate assets. He has lied to the Court under oath and has done what he could to prolong the trial and the divorce process. He will most likely do what he can do to prolong the post-trial process.

(*Id*. at 100-01.)

Unfortunately, Judge Flynn accurately foreshadowed Mr. Haddad's future attempts to stymy the post-trial process. Plaintiff appealed the aforementioned judgment of divorce ("JOD") to the Superior Court of New Jersey, Appellate Division. The Appellate Division affirmed that JOD in a brief *per curiam* opinion dated April 11, 2008. *Haddad v. Haddad*, Super. App. Div. WL 993729 at *6 (N.J. Super. App. Div. April 11, 2008). Plaintiff also appealed various aspects of a post-judgment order entered by the New Jersey Superior Court on September 7, 2007, in which Plaintiff

---

[1] Judge Flynn's opinion details a long history of rampant alcohol abuse, coupled with denial and refusal to deal with said abuse.

was denied relief on various grounds.  The Superior Court of New Jersey, Appellate Division affirmed that post-trial order in all respects, save one discrete issue regarding Plaintiff's demand for compensatory parenting time with his children.  The court remanded for further proceedings on that discrete issue alone.  *Haddad v. Haddad*, Super. App. Div. at 9 (N.J. Super. App. Div. August 19, 2008).

### B.  Plaintiff's Federal Court Actions

In addition to his filings in New Jersey Superior Court, Plaintiff has improperly filed suit in federal court on two previous occasions.  Each time, Plaintiff's action was dismissed because of parallel actions pending in state court.  On March 7, 2006, Plaintiff filed his first federal action against Defendant Elizabeth Balfour [*Haddad v. Haddad*, Civ. No. 06-1017, Docket # 1].  In an order dated March 8, 2007, United States Magistrate Judge Bongiovanni administratively dismissed this initial suit on two grounds: (1) Plaintiff failed to meet the jurisdictional amount in controversy required to file suit in federal court, and; (2) the *Younger* Abstention Doctrine required dismissal due to Plaintiff's pending matrimonial action in state court [Civ. No. 06-1017, Docket # 20][2].  Because Plaintiff is an attorney, Judge Bongiovanni found that he "could not have had an objective knowledge or belief at the time of filing his Complaint that the claim was well grounded in fact and law, because no such ground exists." [*Id.*]  Additionally, because Plaintiff sought relief in federal court from orders issued from a state judge, the court found that Plaintiff's claims were at best frivolous, and as such, ordered sanctions against Plaintiff pursuant to FED. R. CIV. P. 11.  Finally, Judge Bongiovanni enjoined Plaintiff from filing suit in federal court regarding any matters relating

---

[2]  Judge Bongiovanni noted that Plaintiff failed to disclose that the subject matter of Plaintiff's complaint was also the subject matter of a pending state court action, as required by Local Rule 11.2.

to his claims in New Jersey state court, until said claims were resolved.

Less than a year later, on November 26, 2007, Plaintiff ignored Judge Bongiovanni's order and filed a motion for an order to show cause against the present Defendants [Civ. No. 07-5617, Docket #1]. In that motion, Plaintiff sought injunctive relief from all arrest warrants stemming from his failure to make alimony and child support payments. Plaintiff again failed to provide this Court with the certification required pursuant to Local Rule 11.2. On February 19, 2008, this Court denied Plaintiff's motion because of the actions pending in state court [Docket #63].

Undeterred by the dismissal of his previous actions, the Plaintiff now takes another bite at the apple in federal court. The present action stems from a rambling 385-paragraph complaint filed by Plaintiff on November 26, 2007. With this complaint, Plaintiff fires a salvo apparently aimed at every person and organization remotely connected with his state court divorce proceedings. Reduced to its fundamentals, Plaintiff's complaint asserts that the various defendants in this case conspired to deprive him of his rights under the United States Constitution. Plaintiff seeks injunctive relief and punitive damages of $80,000,000. For the sake of clarity and economy, the Court will summarize the specific allegations contained in Plaintiff's complaint against each group of defendants:

### 1. Plaintiff's Claims Against The State Judicial, And The Monmouth County Defendants

Plaintiff lodged ten counts against Judge Flynn. Counts I through IV allege violations of 42 U.S.C. § 1983 – specifically that Judge Flynn failed to inform Plaintiff of his right to counsel at various proceedings during the divorce trial, thereby violating Plaintiff's Fourteenth Amendment due process rights. (Compl. at ¶¶ 65-96.) Count V asserts a cause of action under 42 U.S.C. § 1985, alleging that Judge Flynn acted in conspiracy with Defendant Newman to threaten and prevent one

of Plaintiff's proposed witnesses from testifying at the divorce trial.  (*Id.* at ¶¶ 97-109.)  Counts VI through VIII allege that Judge Flynn "willfully, wantonly and wrongfully" ordered Plaintiff to pay monies owed to Defendant Balfour, or be incarcerated.  (*Id.* at ¶¶ 110-127.)  Count IX alleges that Judge Flynn failed to make a necessary adjustment to Plaintiff's arrears payments due to Defendant Balfour, after an audit revealed errors in prior payment calculations.  (*Id.* at ¶¶ 128-42.)  In Count X, Plaintiff asserts he is entitled to attorney's fees, pursuant to 42 U.S.C. § 1988.

The causes of action alleged against P.O. Klein (*Id.* at ¶¶ 226-275), the Monmouth County Probation Division (*Id.* at ¶¶ 318-344), Monmouth County Sheriff's Office (*Id.* at ¶¶ 345-364), and Monmouth County Department of Corrections (*Id.* at ¶¶ 362-384) all relate to the enforcement of Plaintiff's support allegations.  Plaintiff asserts that these entities also violated his due process rights under the Fourteenth Amendment of the United States Constitution.

### 2. Plaintiff's Claims Against Defendant James Newman

Plaintiff asserts claims against Defendant James Newman under 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendant Newman, his ex-wife's attorney, deprived him of his due process rights under the Fourteenth Amendment of the United States Constitution by failing to ensure that Plaintiff was informed of his right to counsel at various state court hearings.  (Compl. at ¶¶ 145-176.)  Plaintiff also asserts claims under 42 U.S.C. § 1985, alleging that Defendant Newman conspired with Judge Flynn and Defendant Balfour to prevent one of Plaintiff's proposed witnesses from testifying.  (*Id.* at ¶¶ 177-189.)  Plaintiff alleges that Defendant Newman wrongly advocated for various child support or alimony payments due to Plaintiff, knowing that Defendant did not owe these amounts.  (*Id.* at ¶¶ 190-223.)  Plaintiff also seeks attorney's fees.  (*Id.* at ¶¶ 224-225.)

7

### 3. Plaintiff's Claims Against Defendant Elizabeth Balfour

In Plaintiff's first cause of action against Defendant Balfour, he seeks relief under 42 U.S.C. § 1985, alleging that Defendant Balfour conspired with Defendant Newman and Judge Flynn to prevent one of Plaintiff's proposed witnesses from testifying.  (Compl. at ¶¶ 276-290.)  Plaintiff's second, third, and fourth causes of action assert that Defendant Balfour conspired with Defendant Newman and Judge Flynn to "willfully, wantonly, and wrongfully" misrepresent the amount of payments in arrears owed to Defendant Balfour by Plaintiff, for which Plaintiff was incarcerated on three separate occasions, after failing to pay these amounts.  (*Id.* at ¶¶ 291-308.)  The fifth cause of action seeks relief under 42 U.S.C. §§ 1985 and 1986 and asserts that Defendant Balfour had the power to prevent the conspiracy that led to Plaintiff's witness not testifying at trial, but Plaintiff failed to exercise this power.  (*Id.* at ¶¶ 309-315.)  The sixth cause of action seeks attorney's fees. (*Id.* at ¶¶ 316-17.)

### 4. Defendant Elizabeth Balfour's Motion For Sanctions Against Plaintiff

On May 9, 2008, Defendant Elizabeth Balfour filed a motion for sanctions against Plaintiff Haddad pursuant to FED. R. CIV. P. 11.  Defendant Balfour asserts that the Plaintiff's history of filing patently frivolous  claims before this Court supports an award of sanctions under FED. R. CIV. P. 11. (Def. Balfour's Mot. For Sanctions)

## II. DISCUSSION

For the sake of clarity and economy, and because the Defendants move pursuant to different Federal Rules of Civil Procedure with varying legal standards, the Court will discuss each of the Defendants' motions individually, below.

### A. Motion To Dismiss With Prejudice Plaintiff Louis Haddad's ("Plaintiff") Complaint

**Pursuant To Federal Rule Of Civil Procedure 12(b)(6) Filed By The State Judicial, and The Monmouth County Defendants.**

### 1. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (*citing Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. *Id.* at 1965-66 (*abrogating Conley's* standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. Id. at 1965. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied 510 U.S. 1042 (U.S. Jan. 10, 1994).

### 2. Application

#### a. All Of The State Judicial, And The Monmouth County Defendants Are Protected By Eleventh Amendment Immunity

The State Judicial Defendants argue that Plaintiffs' claims against them should be dismissed because they are protected by Eleventh Amendment Immunity. The Monmouth County Defendants join in the State Judicial Defendants' motion, and assert that Plaintiffs' claims against them should also be dismissed because of Eleventh Amendment Immunity. The Court agrees.

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose liability, to be paid from public funds in a state treasury, is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 663, (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of whether the relief sought is monetary or injunctive. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100,(1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345. (1979).

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70-71, and n.10 (1989); *Grabow v. Southern State Correctional Facility*, 726 F.Supp. 537,

538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983)).

The Superior Court of New Jersey and its vicinages are part of the judicial branch of the State of New Jersey, and are thus protected by the Eleventh Amendment.  *See Johnson v. State of New Jersey*, 869 F. Supp. 289, 296-98 (D.N.J. 1994). *See also Hunter v. Supreme Court of New Jersey*, 951 F. Supp. 1161, 1177 (D.N.J. 1996), aff'd, 118 F.3d 1575 (3d Cir. 1997).  Further, where employees of the Superior Court of New Jersey are sued for actions taken in their official capacity, they are likewise protected by the State's sovereign immunity under the Eleventh Amendment.  *See Hunter*, 951 F. Supp. at 1178; *Johnson*, 869 F. Supp. at 298.  While "state officials literally are persons[,] a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will*, 491 U.S. at 71.  Plaintiff's separate claim against P.O. Klein in her individual capacity is indistinguishable from the complaints against P.O. Klein in her official capacity.  Moreover, the substance of Plaintiffs' claims against P.O. Klein is that she improperly acted in her official capacity in enforcing orders.

Plaintiffs' claims against the State Judicial Defendants are therefore barred by the Eleventh Amendment, and warrant dismissal.  Plaintiffs' claims against Monmouth County Sheriff's Office and Monmouth County Department of Corrections, which seek relief for those entities acting under the color of law, also require dismissal under Eleventh Amendment Immunity.

### b.  Judge Flynn Is Entitled To Absolute Judicial Immunity

Judge Flynn also argues that Plaintiff's claims must be dismissed because he is entitled to absolute judicial immunity.  The Court agrees.

It is well established that judges are generally "immune from a suit for money damages."

*Mireles v. Waco*, 502 U.S. 9 (1991).  The doctrine of judicial immunity is based upon a theory that a judge, in performance of his or her duties, should be free to act as is necessary under color of title without threat of suit for damages.  *See Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872).  This immunity applies to Section 1983 actions as well.  *Pierson v. Ray*, 386 U.S. 547, 554 (1967).  Further, the Supreme Court has made clear that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts . . ." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (quoting *Bradley* at 351).

The Supreme Court has defined judicial immunity as absolute and only able to be overcome in two sets of circumstances.  First, a judge is not immune from liability for non judicial acts.  Second, a judge is not immune for judicial actions that are taken without jurisdiction.  *Mireles*, 502 U.S. 9 at 11-12.  Here, Plaintiff's allegations do not establish that Judge Flynn's actions were either non judicial or outside his scope of jurisdiction.  As such, Plaintiff's claims against Judge Flynn must be dismissed as he is absolutely immune.

### c.  Defendant Klein Is Entitled To Qualified Immunity

Probation Officer Bonnie Klein ("P.O. Klein") also argues that Plaintiff's claims must be dismissed because she is entitled to qualified immunity.  The Court agrees.

Qualified immunity is available to government officials sued as a result of actions taken while performing their official duties.  The United States Supreme Court defined the test for establishing qualified immunity in *Harlow v. Fitzgerald*, holding:

> [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1981); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner.").

Here, qualified immunity shields the actions of P.O. Klein. This Court has previously noted that Plaintiff's separate claim against P.O. Klein in her individual capacity is indistinguishable from the complaints against P.O. Klein in her official capacity. Further, the substance of Plaintiffs' claims against P.O. Klein is that she improperly acted in her official capacity. Therefore, because Plaintiff's claims against P.O. Klein are based upon actions taken while performing her official duties, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. In this case, Plaintiff's submissions to this Court contain nothing more than bare allegations of malice. A thorough review of the record before this Court establishes that Defendant Klein's actions were, at all times, objectively reasonable. Indeed, the record indicates that Defendant Klein did nothing more than diligently perform her assigned tasks. As such, Plaintiff's bare allegations of malice against Defendant Klein will be dismissed because she is entitled to qualified immunity.

### 3. Disposition

Because the State Judicial and Monmouth County Defendants' actions are immunized from suit as noted above, Plaintiff's claims against these Defendants will be DISMISSED WITH PREJUDICE.

**B. Motion For Summary Judgment On All Counts Of Plaintiff's Complaint Pursuant To FED. R. CIV. P. 56 Filed By Defendant James Newman**

13

### 1. Legal Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### 2. Application

#### a. Plaintiff's Claims Must Be Dismissed Because Defendant Is Protected By Litigation Immunity

Defendant argues that Plaintiff's claims rooted in 42 U.S.C. § 1983 require dismissal because Defendant is protected by litigation immunity. The Court agrees.

With the exception of Count V, Plaintiff asserts federal claims pursuant to 42 U.S.C. § 1983. Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

14

42 U.S.C. § 1983. However, "[a]s a general rule, . . . state court litigants are not amenable to suit under the provisions of the Civil Rights Act. This is true because, as mere participants in the state forum, their activities cannot be said to be attributable to the state itself." *United States General, Inc. v. Schroeder,* 400 F. Supp. 713, 717 (E.D. Wis. 1975); *see also McGann v. Baranowicz*, 617 F. Supp. 845, 846 (S.D.N.Y. 1985)(*quoting Imbler v. Pachtman*, 424 U.S. 409, 418 (1975)("In enacting § 1983, Congress did not abrogate legislative immunities 'well grounded in history and reason'").

Courts have made exceptions to the general rule that provides immunity to attorney defendants against § 1983 claims where attorneys are alleged to have acted maliciously or in bad faith and without a legitimate expectation of success or a legitimate purpose in bringing an action against an individual. *See Schroeder* 400 F. Supp. at 717. Courts have also made exceptions where the relevant state statute permits an attorney to initiate criminal proceedings. In *Voytko v. Ramada Inn of Atlantic City*, the plaintiffs filed a § 1983 claim against a hotel as well as the hotel's lawyers, alleging that the defendants had maliciously prosecuted the plaintiffs for failing to pay their hotel bill. 445 F. Supp. 315 (D.N.J. 1978). The court found that New Jersey's innkeepers statute, which allows a hotel's attorney to initiate a criminal prosecution and act as a state prosecutor, converted these attorney's actions to state actions for the purposes of 42 U.S.C. § 1983. *Id.* at 330. In making this finding, the court explained that under the statute, once the attorney initiated the criminal process, generally an arrest warrant was issued and the defendant was detained, without regard to the merits of the case. *Id.* at 329. The court noted, however, that "[a]n attorney who represents his client in good faith will be immune from civil liability for malicious prosecution." Only where "an attorney knows . . . that his client acts with malice and without probable cause in filing a criminal complaint, or [] the attorney's own acts are taken with malice and without probable cause, [will] the

attorney [] not be immune from civil liability." *Id.* at 331.  Finally, this Court notes a persuasive case from the Seventh Circuit, in which that court stated that where an attorney obtains an order requiring a spouse to make child support payments, and the spouse is held in contempt of court for failing to do so, the attorney is not subject to a § 1983 claim.  *See Jones v. Jones*, 410 F.2d 365, 366 (7th Cir. 1969), cert. denied, 396 U.S. 1013 (1970).

Here, Defendant Newman is clearly entitled to the protection of litigation immunity because neither of the exceptions to the general rule of litigation immunity are applicable.  First, to the extent he does so, Plaintiff cannot rationally argue that Defendant Newman brought the underlying state actions in bad faith, with malice, or without a legitimate expectation of success.  Absolutely nothing in the record supports that conclusion.  To the contrary, the actions brought by Defendant Newman against Plaintiff were totally legitimate as Plaintiff consistently failed to pay the child support specifically ordered by the Superior Court of New Jersey.  Second, the litigation immunity exception relating to New Jersey's innkeeper's statute is totally inapposite in this context.  The *Voytko* court discussed a situation in which the attorney himself acted as the *de facto* state prosecutor.  In this case, Defendant Newman acted in no such capacity.  Rather, Plaintiff Haddad was jailed because he repeatedly violated a court-order issued by the Superior Court of New Jersey.  Therefore, because neither of the exceptions to litigation immunity apply in this case, Plaintiff's claims seeking damages against Defendant Newman for the enforcement of child support and alimony payments fail.

To the extent Plaintiff alleges in his complaint that Defendant Newman conspired with Judge Flynn to enforce fraudulent payment orders, the Court finds these to be bare allegations of conspiracy, without more, that lack both support and credibility.  As such, Plaintiff's allegations of conspiracy against Defendant Newman are insufficient.

Plaintiff's claims in Counts I through IV of his complaint, where he alleges that Defendant "failed to have Plaintiff informed of his right to counsel," also require dismissal. Plaintiff cites no authority (correctly, as none exists) that requires an opposing counsel to inform a defendant of his right to counsel.

Plaintiff's claim for relief in Count V of the complaint must also be dismissed because Plaintiff may not sustain a § 1985 conspiracy claim "in the attorney client context." *Heffernan v. Hunter*, 189 F.3d 405, 412-13 (3d Cir. Pa. 1999).

### 3. Disposition

Because Defendant James Newman's actions are protected by litigation immunity, and because Plaintiff otherwise fails to state a viable cause of action, Defendant Newman's motion for summary judgment on all of Plaintiff's claims will be GRANTED.

**C. Motion To Dismiss Plaintiff's Complaint Pursuant To Federal Rules Of Civil Procedure 12(b)(1) And 12(b)(6), And Motion For Judgment On The Pleadings On All Counts Of Plaintiff's Complaint Pursuant To FED. R. CIV. P. 56 Filed By Defendant Elizabeth Balfour.**

### 1. Legal Standard

The Court articulated the legal standards applicable to Defendant Balfour's motions previously in this memorandum opinion. The legal standard for motions pursuant to FED. R. CIV. P. 12 was discussed in section (II)(A)(1), above. The legal standard for motions pursuant to FED. R. CIV. P. 56 was discussed in section (II)(B)(1), above. The Court applied these standards in deciding Defendant Balfour's motions.

### 2. Application

#### a. Plaintiff's Claims For Relief Must Be Dismissed Because They Fail To State A Claim Upon Which Relief May Be Granted

17

Plaintiff alleges, without more, that Defendant Balfour conspired with Defendant Newman and Judge Flynn to prevent one of Plaintiff's witnesses from testifying, and failed to prevent this conspiracy, despite her ability to do so.  Plaintiff also alleges that Defendant Balfour somehow conspired with Judge Flynn and Defendant Newman to have Judge Flynn determine that Plaintiff owed Defendant support money that was not in fact owed.  Plaintiff, however, has utterly failed to state any plausible grounds to support these claims. *See Twombly*, 127 S.Ct. at 1964.  For Plaintiff's claims to survive a motion to dismiss, it must contain sufficient facts beyond the mere speculative level. *Id.* at 1965.

Here, this Court would have to indulge in wild speculation to find sufficient facts to support Plaintiff's claims against Defendant Balfour.  Neither Plaintiff's complaint, nor even his reply brief, provide any facts that sufficiently support his claims and demonstrate that Defendant Balfour was involved in the asserted conspiracies.  Plaintiff argues that an email from Defendant sent to their daughter, in which she states that "the relocation to Syracuse is pretty much in the bag," evidences a conspiracy.  Plaintiff also argues that when he cross examined Defendant about this email, Judge Flynn "helped her in her answers," further evidencing a conspiracy.  (Pl's. O'ppn. Br. at 26; Haddad Certification, Ex. E at 4-5.) [Docket # 99]  For the Court to conclude that a conspiracy between Defendant Balfour, her attorney, and Judge Flynn existed based upon Defendant Balfour's assurance to her daughter would be utter conjecture.  The possible bases for Defendant Balfour's statement are limitless.  Additionally, contrary to Plaintiff's contention that Judge Flynn helped Defendant answer questions during cross-examination, a review of the trial record reveals that Judge Flynn actually admonished Defendant Balfour for involving her daughter in Defendant's marital dispute, and directed her to answer Plaintiff's questions.  (Haddad Certification, Ex. E at 4-5.) [Docket # 99]

18

Plaintiff's conspiracy claims are bare allegations, without more.  They utterly fail to form an adequate factual basis to support his cause of action against Defendant Balfour and must be dismissed.

Because the Plaintiff has failed to state a claim pursuant to FED. R. CIV. P. 12, the Court need not address Defendant Balfour's motion for summary judgment pursuant to FED. R. CIV. P. 56.

### 3. Disposition

Because Plaintiff's complaint has failed to state a claim upon which relief may be granted against Defendant Elizabeth Balfour, Plaintiff's claims against Ms. Balfour will be DISMISSED.

### D.  Motion For Sanctions Against Plaintiff Pursuant To FED. R. CIV. P. 11 Filed By Defendant Elizabeth Balfour

### 1. Legal Standard

FED. R. CIV. P.11 was designed to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation . . . ."  *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988) (internal quotations omitted).  Rule 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

19

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

FED. R. CIV. P. 11(b).  A court may impose sanctions for conduct prohibited by Rule 11(b).  Rule 11(c) provides that:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

FED. R. CIV. P.11(c).  The rule further provides that "[if] warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.  FED. R. CIV. P. 11(c)(2).

The Third Circuit Court of Appeals has stated that for Rule 11 sanctions, the question is whether the conduct was "reasonable[] under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 288 (3d Cir. 1991) (citations omitted).  In this context, reasonableness has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Id.* (internal quotations omitted).  Furthermore, bad faith is not required.  *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (citation omitted).

### 2. Application

#### a. Sanctions Are Warranted Against Plaintiff

This memorandum opinion has thoroughly explained the multitude of frivolous filings, claims, and arguments made by Plaintiff in this action and others.  Defendant Balfour, Plaintiff's ex-

wife and mother of his seven daughters, has been Plaintiff's favorite target, in this Court and others. Defendant Balfour asks this Court to sanction Plaintiff pursuant to FED. R. CIV. P.11.

Similar to the findings made by United States Magistrate Judge Bongiovanni on March 8, 2007, this Court now finds that Plaintiff's actions in filing this lawsuit were patently unreasonable. Though a finding of bad faith is not required for the imposition of sanctions, *Martin*, 63 F.3d at 1264, this Court finds that Plaintiff has filed this lawsuit in bad faith.  Plaintiff, unsatisfied with the ruling of the New Jersey Superior Court in his divorce trial, has filed numerous law suits against Defendant Balfour and others.  All of these suits have been summarily dismissed on basic legal grounds, and have wasted precious judicial resources.  Undoubtably, each of these suits has caused distress and inconvenience to Defendant Balfour and her various Co-Defendants.  The record does not provide any support for an objective belief at the time this complaint was filed that the claims were "well-grounded in law and fact."  *Ford Motor Co.*, 930 F.2d at 289.  Under the circumstances, Plaintiff's actions were unreasonable and sanctions are appropriate.  *Id.*

### 3.  Disposition

Because this Court finds that Plaintiff Haddad has acted unreasonably and in bad faith throughout this action, this Court will grant Defendant Balfour's motion for sanctions against Plaintiff Haddad pursuant to FED. R. CIV. P.11(c)(2).  Plaintiff shall compensate Defendant for all reasonable expenses, including attorney's fees, that she incurred during this litigation.

## III. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the following five motions **(1-5, below)** filed by the Defendants will be GRANTED:

**(1)** motion to dismiss with prejudice Plaintiff Louis Haddad's ("Plaintiff") complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the following Defendants: (1) the

Superior Court of New Jersey, Monmouth Vicinage, Probation Division; (2) the Honorable

Terence P. Flynn, J.S.C.; (3) probation officer Bonnie Klein ("P.O. Klein") (collectively "State

Judicial Defendants") [Docket # 79];

(2) motion to dismiss with prejudice Plaintiff's complaint pursuant to FED. R. CIV. P.

12(b)(6) filed by the following Defendants: (1) the Monmouth County Sheriff's Office; (2) the

Monmouth County Department of Corrections (collectively "Monmouth County Defendants")

[Docket # 82];

(3) motion for summary judgment on all counts of Plaintiff's complaint pursuant to FED.

R. CIV. P. 56 filed by James Newman ("Defendant Newman") [Docket # 81];

(4) motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), and motion for judgment on the pleadings on all counts of Plaintiff's

complaint pursuant to FED. R. CIV. P. 56 filed by Elizabeth Balfour ("Defendant Balfour")

[Docket # 83];

(5) motion for sanctions against Plaintiff pursuant to FED. R. CIV. P. 11 filed by

Defendant Balfour [Docket # 108].

An appropriate form of order accompanies this memorandum opinion.

Dated: September 8, 2008

       s/ Garrett. E. Brown, Jr.       
GARRETT E. BROWN, JR., U.S.D.J.